Our final case for today, now this afternoon, is Lusk v. Cole. So, Mr. Mosen, whenever you're ready. May it please the court. My client, Mr. Lusk, did everything that was required under the prison rules to exhaust remedies. First, he filed the appropriate form and wrote legibly and signed with his own name. And second, he put it in a sealed envelope that he sent to the correct address. Now the state foiled his attempt to exhaust remedies for one and only one reason. He used another inmate's envelope. So I take it you concede that if they had wanted to punish him for a minor offense for receipt of somebody else's property, they could have done so using one of the sanctions laid out in the administrative regulations. In Chapter 303? Right. Yes. At the time. It's changed a little bit. Yes. They could have done that in the Chapter 303. And actually, Chapter 303 provides for no consequences. There is a provision that says no conduct report, just a slap on the wrist. And actually, he did not receive a conduct report. Instead, they used the consequence of denying his appeal and denying his access to the court, which is quite disproportionate. So now nowhere in Chapter 310 is there a regulation that allows the state to use a violation of Chapter 303 to refuse to process an appeal. And nowhere in Chapter 303 is there a rule that allows the state to give as a consequence, as a punishment for a violation, the refusal to process an appeal. Now, I take it if the state wanted to amend the rule to say we will reject appeals if you use somebody else's envelope, they could do so. It's just that they've never done it. Absolutely. Not even with this new revision of the rules. This is correct, Your Honor. Yes. Now, this court has established two rules, two clear rules that apply squarely in this case. First, the state cannot defeat exhaustion by pulling a rule that does not belong within the four corners of the grievance process. Well, I'd put it slightly differently. I mean, if the state makes it impossible to exhaust, then that requirement drops out and the case moves forward without the exhaustion defense. Absolutely, and this would be a fine rephrasing of the rule. And the second rule that this court has suggested is that the state cannot defeat exhaustion by rewriting the rules within the grievance process, which the state tried to do here. So the first rule here, the state used a provision under 303 to deny, to refuse processing appeal under 310. Can I ask you a question? Do we know, we must know whether the state ever opened this envelope. They must have opened it and discovered that, did the envelopes have somebody's name printed on them?  So the envelope is not part of the record. So the state Ipsy Dixit said there was a violation and did not bother to bring the envelope to the attention of the court. We don't know where it is right now. So we don't really know why the state thought that it was somebody else's envelope. Well, we do have proof that they opened the envelope because, you know, and the program assistant Right, right, you put in the, I mean, we've seen Mr. Lusk's appeal. Exactly. They opened the envelope, they saw the form, and actually somebody from the corrections complaint examiner read the envelope and rejected the appeal as such. Did not just return mail that was sent with the wrong envelope. Opened it, looked at it, and refused to process it, which is a very important point. Now if we look at the second rule, the state cannot defeat exhaustion by filling in the gaps. If there is a grievance procedure that's not perfectly written, cannot just make connections that are not within the grievance procedure. And here, the reasoning that the district court relied on and that the state agrees with is that the requirements that apply to initial complaints also apply to appeals. And that's not the case. The words are never used interchangeably within the chapter. And, you know, the state cannot rewrite the rules. And actually, they cannot rewrite the rules on the spot as needed. But the state since has rewritten the rules, and now the procedure for appeals specifically says that a form has to meet the requirements, the same requirements as for an initial complaint. So this has been fixed. Now, the proper way, it could not be fixed on the spot just to deny exhaustion to my client. So what your client is looking for, I take it, is really just the ability to move forward with this case. You've said you want summary judgment on the exhaustion point, but I take it that's like an issue summary judgment. Yes, just summary judgment only on the exhaustion issue so that he can proceed with his case, according to your honor. Now, this court. How much does it cost to buy an envelope in this prison? It's not part of the record. Not in the record? Yeah. You speculate that envelopes are pretty cheap, although the prison definitely has an interest in preventing barter and other kinds of exchanges among prisoners because that can lead to governance issues of gangs or other kinds of things. It certainly has an interest in doing that and can do that under Chapter 303, titled Discipline. If there is bartering, there is a penalty of consequences that the state can use to maintain order. Now, this court has been very strict with compliance, but has excused prisoners from doing things that would be natural. For example, when a prisoner filed an emergency grievance and the state returned it saying, well, it doesn't qualify as an emergency, the natural thing to do would be to submit the grievance as a non-emergency grievance. But this court said the prisoner didn't have to, and the prisoner had exhausted the remedies. Whenever there was a refusal to process a grievance and there was no regulation describing what to do if there was a refusal to process a grievance, the natural thing to do would be to resubmit the grievance in a different format. But this court has said the prisoner doesn't have to do that. The prisoner has exhausted remedies. Now, if the court accepted the state's premise that regulations in 303 are naturally part of the 310 grievance process, then all 80-plus regulations in the discipline chapter would all of a sudden become part of the grievance process, and it would make the grievance process so opaque that it would excuse exhaustion under Supreme Court precedent. Now, if the state said, well, only some of the regulations, as it suggests in its brief, some of the regulations apply, not others, which ones? This court has specifically said no guessing games. Prisoner is not expected to guess what regulations apply. So I would like to save the remainder of my time. That would be fine. Thank you. Mr. Roth. Good afternoon, Your Honors. May it please the Court, Assistant Attorney General Colin Roth here on behalf of the appellees. Mr. Lusk had every opportunity to exhaust his complaint in compliance with prison rules. But the real question is, I think it's a serious one. I totally grant you that it's a minor offense to receive property from another, among a long list of verbs, to receive property from another inmate. But there are penalties set forth in the administrative regulations. And actually, interestingly, even not that these are relevant, but even as amended, the rules now allow the rejection of an appeal, as I understand it, if there's threatening language or the possession of harmful substances. But even now, the rules don't spotlight using another inmate's envelope or property as a reason to reject appeals. And so I'm very concerned about this. And actually, my frivolous thought about it is that it's the kind of thing that gives lawyers a bad name. I mean, we are obsessing about this envelope. And inside the envelope was a perfectly legible, well-written appeal from Mr. Lusk, in which he uses his name numerous times in the body of it. He signs it at the bottom under his name. It's just mind-boggling to me to think that because there's an envelope problem, the prison didn't solve the envelope problem with a reprimand or whatever of the other measures and accept his appeal. They got his appeal on the right form. I have two responses to that, Your Honor. First is the ultimate reason his appeal was rejected was it was untimely. When he finally sent it back out— No, no, no. Because he couldn't get the envelope. I mean— Because you rejected the other one. Yeah, you rejected it. It's true that the first time he attempted to submit the appeal, it was sent back to him because he broke the envelope. And it was timely. So please let's not look at the second one. He submits a timely appeal, and he submits it on the right form, and he signs his own name to it. He puts it in the wrong envelope, which I have a lot of trouble with the fact that the state threw it away. I guess we just have to trust your word for it that this is what happened. I don't know that this is what happened. Well, just on that point, Mr. Lusk did admit in the district court during summary judgment briefing that he used another inmate's envelope and that that was unauthorized. So did the inmates all have personalized stationery? No. I admit it's not in the record. My understanding is they receive envelopes that are pre-stamped with their names on them because, as Your Honor pointed out, there is potential for bartering with items of property in the prison. No, no. I totally understand that. I'm not viewing this as an attack in any way on 303.40. Fine rule. And then we have all of these, just looking at the appendix in the blue brief, 303.70, minor penalties. So you could have confined him to the building. You could have told him his recreation privileges were suspended. You could have confined him to his cell. You could have done all sorts of things to him. And by doing so, to deter the kind of barter that the rule was made for. Nowhere in that list does it say, and we can also reject an appeal of a grievance because you put it in the wrong envelope. So I understand that the envelope piece of this makes it seem like sort of a frivolous outcome to send his mailing back. It's an unjust outcome because you've made it impossible. What I would submit is that this is a violation of the disciplinary rules. So what? It's not a violation that relates to whether you received the appeal. Let me try this hypothetical, but I think it may drive home the point. It tweaks the facts a little bit from this case, but I think it highlights the issue here. Say Mr. Lusk, at 10 p.m. on the night of the last day he could have filed his appeal, finds himself locked in his cell. It's after hours. He's locked in his cell. He realizes it's the last day to file his appeal, and he needs to get it in. He really wants to get it in. So somehow he breaks out. I don't know how he does it, but he breaks out of his cell, finds his way to the Dropbox, puts his complaint in on time. But obviously he broke a variety of prison rules to get there and accomplish that. So it's hard for me to understand why DOC has to then accept the complaint because he happened to get it in the Dropbox at 11.59 p.m. on the last day, but ignore the disciplinary— What are the rules for breaking out? Part of the issue here is that the punishments that are listed for using another inmate's property range from slap on the wrist and reprimand, but they don't include this. You've described a major offense. He could lose good time credit for that. No one would do that. My point, though, is that you're incentivizing in some small way, however minor it may be, noncompliance with disciplinary rules when they're aimed at effectuating a timely grievance filing. So the incentive is cut both ways. So suppose he says, I had an option. I could have just put the complaint form or the appeal form in the mail, not in an envelope. The reason I didn't do that is because it has information in it that could likely lead to me getting killed. And so I thought the better course was to put it in an envelope to ensure some confidentiality when it was transmitted to the grievance group. Well, I guess I'm not entirely sure what Your Honor is driving at. So under your argument, then, can't use anybody else's envelope because that violates the rules. What I would say, Your Honor, is… So my choice is then I don't have an envelope. I'm just going to put it in the mail. And there's a 10-day time period. So what I would say is you've set up a false choice there, Your Honor, in that Mr. Luss certainly understood that DOC has a legal loan program in place for inmates to receive loans. He says in his filing that he was in segregation, that his access to those kinds of programs was severely limited. He had a 10-day rigid time period that your later action showed that you enforce, as is your right, vigorously. So the legal loan program for something that's got a 10-day window isn't going to help. So I have two responses. First is I don't think there's anything in the record that indicates that his being in segregation would have affected his ability to use the legal loan program. The second thing I'd say on the timing is there is a provision in the code that allows for the deadlines to be effectively waived for good cause. But that's a thin hope for inmates. Well, I'm not so sure. It's discretionary on the part of the grievance. You're compelling him to use a legal loan program to comply with a rule that doesn't exist. Well, I don't think that's true, Your Honor. We want him to use the legal loan program to comply with the disciplinary rules against using other inmates' property. But there's no rule that says if you use that envelope that somebody gave to you, you're going to be disciplined not under one of the provisions in 303, but in fact, we don't care if some guard raped you and you are trying to take that through the grievance process. We're not going to listen to a word you have to say because it's in the wrong envelope. Well, I mean, I guess my reaction to that is strict compliance with prison rules and the grievance process often results in harsh results of that nature. But if you want strict compliance, let's have strict compliance. And that would mean matching the infraction to the authorized penalty. Because he could decide, right? He could say it's worth it to me to risk getting, I have 10 days, and it's worth it to me to risk getting the penalties listed in 303 for using another inmate's property because I really want to get my appeal. So reprimand me or give one of the other listed punishments that I have notice of. Certainly an inmate could make sort of a meritorious risk cost-benefit analysis of that nature. Of course they could, and if you're arguing for a strict interpretation approach to this, I think you can't possibly prevail because minor offenses have certain penalties. Major offenses have, as they should, very significant penalties. Fair enough. I see if I'm not getting traction on the disciplinary violation, I would say there is a procedural rule about filing complaints under your own name, and I understand that, admittedly, his signature was on the form. And his name is all through the – I mean, you know, you've read it. But, Your Honor, there could be concerns about – Using the other guy's envelope was not an attempt to commit a fraud. Well, but it could be, Your Honor. He says so. I think you can't decide this case based on, you know, assumptions about what actually happened. I think when DOC receives mailings and it sees mismatches between what's on the envelope and what's inside, there could be forgery concerns that DOC is concerned about. There's no forgery. There's a variety of reasons. If you all thought that, you'd have the envelope. I'm not sure why we would assume that here. If you thought there was a fraud, you'd be handing us a copy of the envelope right now. Well, I mean, I can't say why the envelope wasn't reserved. Would it be different if he'd scratched out the return address that had the inmate's name? No, because it was still clear that it was not his property and that he had no authorization to use it. I mean, I – Yeah, but you were just relying on the regulation that says it has to be submitted in your name. So I'm saying you wouldn't have that argument if he'd – I'm not sure I'd agree with that, Your Honor, because, again, I think the issue is there could be some concern that the appeal form is not filled out by the person who actually sent it. If we assume that the name on the envelope is the individual who actually sent the mailing and then there's a mismatch with the form on the inside. But the text of this leaves no room for that. Mr. Carl D. Lusk – furthermore, Mr. Lusk is currently prescribed two different inhalers since 12-2015, you know, and then a little bit further down. All started because I, Mr. Lusk, number 564445, was involved in a physical altercation. Your Honor, it's certainly true that he – that the complaint form itself – It's all here, and then he signs it. Well, I understand that. And one thing I would say is that the complaint regulations have a separate requirement that complaints are signed by the inmate. There's a separate requirement for filing them under their own name. And he is filing it under his own name. Offender name, Mr. Carl D. Lusk. Why is the envelope the name of the filer? It doesn't say name of filer colon. Well, again, Your Honor, I would just say that DOC could potentially have fraud concerns when they receive mailings that don't match. Well, if you can see that there's barter within the prison system or potential barter with items of property, there's – I don't think it's – And they would deny it on the merits. They wouldn't deny it because it was the wrong envelope. They would deny it on the merits if they thought that there was a fraud problem in the appeal that was being advanced. Well, I mean, when the examiner receives the submission, sees the mismatch, you know, the complaint examiner doesn't have evidentiary gathering abilities. So they're in no position to evaluate the, you know, suspicion of fraud or anything of that nature. Oh, but that means they can't even – that argument proves too much because it would suggest they can't even handle the appeals. I won't assume that. I think maybe we do have your point. And if you would like to wrap up, that would be fine. Very good, Your Honor. I would just reiterate that I think excusing, which is effectively what Mr. Luss asks for, excusing in some sense violations of prison disciplinary policy just because they happen to be committed, knowingly committed in pursuit of the grievance process seems like it just creates problems for DOC. The record shows that the prison never did try to impose a penalty on him under the approved – I understand that, Your Honor. That's true. Okay. So that's why I have a little trouble with the excusing idea. You could have punished him. We could have punished him in the exercise of discretion that we chose not to, but that's the rule effectively Mr. Luss is advocating for here. It's that – No, he's not saying he's immune from the punishments. He's just saying his appeals should be heard. He can do effectively whatever he wants in pursuit of filing the grievance so long as it gets in the drop box by 1159 p.m. on the day he's due. Okay. All right. Thank you very much. Thank you, Your Honor. Mr. Mosen, anything further? Your Honor, I would like to address a few points made by the State. First, the State and the District Court made a lot of the loan policy, and this is a gamble, and this Court has found that the State cannot defeat exhaustion by saying he should have still filed hoped for forgiveness and hoped for a good cause. That's in Ramirez v. Young, 2018. So that's an argument that doesn't stand. Second, the prison break 10 p.m. scenario is perfect because it just goes on to show that there are much more severe consequences under Chapter 303, still not under Chapter 310. Third, the State makes much of incentivizing noncompliance and unrest. Well, if there are appeal envelope-related riots that break out after your role in favor of my client, the State can pass emergency regulations to counter that. Again, as Your Honor said, the State can pass a rule that says no stealing of envelope within Chapter 310. And finally, the State says that Lusk admitted that he used the envelope of another inmate, but he never admitted that he did it without authorization. Now, this Court has been very strict and has required strict compliance from inmates, but this Court has been very fair to inmates that actually comply with the rules as written. So we're asking that the Court reverse, remand, and instruct the District Court to enter summary judgment in favor of my client on the issue of exhaustion. All right. Thank you very much, and thanks as well for taking the appointment. We appreciate your assistance to your client in the Court.